WYATT STANLEY V. THE ATCHISON, TOPEKA & SANTA
FE RAILWAY COMPANY.

No. 15,513.   ( 96 Pac. 34.)

SYLLABUS BY THE COURT.

1. JURY AND JURORS—*Special Findings Inconsistent with the
General Verdict.* When a jury, in addition to a general ver-
dict, make special findings of fact which are inconsistent with
the general verdict the special findings control, and the general
verdict should, on proper motion therefor, be set aside.

2. ———— *Right to a Jury Trial.* In this case either party was
entitled to a jury trial as of right.

3. DAMAGES—*Trespass—Special Findings Inconsistent with a
Verdict for Either Party.* The special findings herein are in-
consistent with themselves and with a general verdict or
judgment in favor of either party, and, after setting aside the
general verdict, it was error to render judgment for the de-
fendant.

Error from Harper district court; PRESTON B.
GILLETT, judge. Opinion filed May 9, 1908. Reversed.

*E. C. Wilcox,* for plaintiff in error.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,*
for defendant in error.

The opinion of the court was delivered by

SMITH, J.: This action was brought by the plaintiff
in error against the railway company to recover dam-
ages for partially tearing down and leaving in an unsafe
condition a fence which was in part on plaintiff's land
and in part along the defendant's right of way through
plaintiff's land, and which enclosed a feed lot in which
plaintiff had a large number of cattle. The plaintiff
claimed the cattle escaped from the feed lot through
the negligence of the defendant's workmen in leaving
the fence, which they were repairing, in an unsafe con-
dition. The defendant claimed that the plaintiff, know-
ing the condition in which the fence was left, was guilty

of contributory negligence in failing to mend the defect.

At the trial forty special questions were submitted to the jury. They returned a general verdict for the plaintiff, and also returned answers to the special questions. Upon a motion of the defendant the court set aside the general verdict and rendered judgment in its favor for costs. The plaintiff alleges error.

That the answers of the jury to the special questions submitted to them were utterly inconsistent and contradictory is apparent from the following questions and answers:

"(4)  Ques.  Did the railroad employees change the said fence on the railroad right of way at the northwest corner of said feed lot in the first part of November, 1904, and run several wires diagonally across the northwest corner of said feed lot and attach to plaintiff's gate or fence on the north side of said lot?  Ans. Yes.

"(5)  Q.  If you answer 'yes' to the last above question, then were said wires so stretched diagonally across northwest corner of said lot wholly insufficient to keep ordinary domestic cattle from escaping from said lot? A.  We consider said fence insecure."

"(7)  Q.  If you answer the last above question in the affirmative, state whether about 200 head of plaintiff's cattle did, about dusk, pass out under said wires, while said wires were in the same condition in which they were left by the railroad men who put them up. A.  Yes; went under, over or through.

"(8)  Q.  If you answer the last above question in the affirmative, state if plaintiff himself did, about one o'clock P. M. of the day on which said cattle escaped, personally see the said wires across the northwest corner of said lot where said cattle made their escape and observe the condition and manner in which they were put up.  A.  Yes."

"(33)  Q.  Would the escape of the cattle from the enclosure in question have been prevented if either the plaintiff or the defendant, the railroad company, had used any care or made any attempt on the afternoon in question to prevent said escape?  A.  Yes."

"(36)  Q.  Was the plaintiff in the exercise of any care or prudence when, after seeing the fence and its condition on the day in question, he failed to take any

steps toward preventing the escape of his cattle? A. Yes, by hauling feed as above stated.

"(37) Q. Was plaintiff in the exercise of proper care and prudence in leaving his cattle on the afternoon in question, in the enclosure in question, while the fence was in the condition it was in at about one o'clock of said afternoon, when he last observed said fence on said afternoon? A. No.

"(38) Q. Was it prudent for plaintiff to leave his cattle in the enclosure on the afternoon in question while the fence and gate at the northwest corner were in the condition which the evidence shows they were in about one o'clock of said afternoon? A. Yes, owing to precautions previously mentioned.

"(39) Q. After plaintiff observed the condition of the enclosure on the day in question was it imprudent for him to leave his cattle in said enclosure thereafter without taking some step to mend said fence or prevent said cattle from escaping from the enclosure? A. Yes, in a measure.

"(40) Q. After plaintiff observed the condition of said enclosure in the northwest corner thereof, about one o'clock on the afternoon in question, did he make any effort to mend said enclosure, or repair the defects therein, so as to prevent said cattle from escaping therefrom? A. No."

The answer to question No. 33 is that both the plaintiff and the defendant were guilty of negligence. The answers to questions numbered 36 and 38 are that the plaintiff was not guilty of contributory negligence, and the answer to question No. 37 is that he was guilty of contributory negligence. In the face of these special answers it is clear that the court did not err in setting aside the general verdict. It is equally clear that it did err in rendering judgment for the defendant thereon. It is a case in which the parties were entitled to a verdict of the jury in favor of one and against the other, according as the jury should find the facts under the evidence and the instructions. The jury found the facts in favor of both parties and against both parties. The special findings of course govern the general verdict, and only a new trial can give to either party his

right to have the issues determined by a jury under the instructions of the court. The court is not authorized in such a situation to take the case from the jury and to determine the facts from the evidence.

The defendant maintains that the nature of the damages is not such that it, in any view of the case, is responsible therefor; in other words, that the petition does not state a cause of action. This question seems to be raised here for the first time, and, as has been frequently decided in this court, we can not consider it.

The judgment is reversed and the case remanded, with instructions to grant a new trial.